1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

BENNY MOORE,

CASE NO.    C06-5532RJB-KLS

11
Plaintiff,

REPORT AND
RECOMMENDATION

12
v.

13
MICHAEL J. ASTRUE[1], Commissioner of
Social Security,

Noted for April 27, 2007

14

15
Defendant.

16

17       Plaintiff, Benny Moore, has brought this matter for judicial review of the denial of his application for

18  supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate

19  Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by

20  Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the

21  remaining record, the undersigned submits the following Report and Recommendation for the Honorable

22  Robert J. Bryan's review.

23                          FACTUAL AND PROCEDURAL HISTORY

24       Plaintiff currently is twenty-six years old.[2] Tr. 37.  He has nine years of education, including both

25

26

27       [1]Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue, who recently became acting Commissioner
of Social Security, hereby automatically is substituted for Linda S. McMahon.

28       [2]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access
to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

1   regular and special education classes, and past work experience as a dishwasher. Tr. 18-19.

2       On October 27, 1986, an application for SSI benefits was filed on behalf of plaintiff, who was a

3   minor at the time. Tr. 17.  He was awarded benefits based on disability, but those benefits were terminated

4   by September 1994. Id.  Plaintiff filed another application for SSI benefits on July 17, 1998, which was

5   denied initially and on reconsideration. Tr. 17, 37-39, 56-57.  A hearing was held before an administrative

6   law judge ("ALJ") on August 31, 1999, at which plaintiff, represented by his father, appeared and testified,

7   as did both plaintiff's mother and father, and a vocational expert. Tr. 350-90.

8       On November 3, 1999, the ALJ issued a decision determining plaintiff to be not disabled, instead

9   finding him able to perform other work existing in significant numbers in the national economy. Tr. 17, 127-

10  35.  On May 29, 2003, the Appeals Council granted plaintiff's request for review, remanding the decision to

11  the ALJ to further evaluate the testimony from plaintiff's mother and father and offer plaintiff an

12  opportunity for another hearing. Tr. 141-43.  On remand, a second hearing was held before the same ALJ

13  on January 13, 2004, at which plaintiff, this time represented by legal counsel, appeared and testified, as did

14  plaintiff's mother, a medical expert and a different vocational expert. Tr. 391-440.

15      On April 8, 2004, the ALJ issued a decision, in which he found plaintiff to have been disabled since

16  September 1, 2003, but not prior thereto, finding specifically that at that time he was capable of returning to

17  his past job as a dishwasher, as well as performing other work existing in significant numbers in the national

18  economy. Tr. 279-86.  On February 3, 2005, the Appeals Council again granted plaintiff's request for

19  review, remanding the decision to a different ALJ for further consideration, but only with respect to the

20  period prior to September 1, 2003. Tr. 287-90.  In particular, the Appeals Council found plaintiff to be not

21  capable of returning to his past job, and directed the new ALJ to re-consider plaintiff's maximum residual

22  functional capacity and its effect on his ability to perform other work existing in significant numbers in the

23  national economy based on vocational expert testimony. Tr. 288-90.

24      On remand, a third hearing was held before another ALJ on September 9, 2005, at which plaintiff,

25  represented by counsel, once more appeared and testified, as did a new medical expert and a third different

26  vocational expert. Tr. 441-71.  On December 21, 2005, the ALJ issued a decision, determining plaintiff to

27  be not disabled, finding specifically in relevant part:

28

REPORT AND RECOMMENDATION
Page - 2

(1)  at step one of the disability evaluation process,[3] plaintiff had engaged in substantial gainful activity between July 4, 2002, and July 30, 2003, but not at any other time prior to September 1, 2003;

(2)  at step two, plaintiff had "severe" impairments consisting of borderline intellectual functioning and avoidant personality traits;

(3)  at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)  at step four, plaintiff had the residual functional capacity to perform simple and repetitive tasks, with certain other non-exertional limitations, but no physical restrictions, and had no past relevant work prior to July 2002; and

(5)  at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy during the period of July 17, 1998, through August 30, 2003.

Tr. 28-28A.  Plaintiff's request for review was denied by the Appeals Council on August 24, 2006, making the ALJ's decision the Commissioner's final decision. Tr. 7; 20 C.F.R. § 416.1481.

On September 18, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3).  Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits for the following reasons:

(a)  the ALJ erred in finding plaintiff's job as a dishwasher constituted substantial gainful activity and past relevant work;

(b)  the ALJ erred in finding plaintiff's migraine headaches, eczema, asthma, depression, and attention deficit disorder ("ADD") to be not severe;

(c)  the ALJ erred in assessing plaintiff's residual functional capacity;

(d)  the ALJ erred in evaluating the lay witness evidence in the record; and

(e)  the ALJ erred in finding him capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

---

[3]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

REPORT AND RECOMMENDATION
Page - 3

1  support the decision. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is

2  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson</u>

3  <u>v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than

4  a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir.

5  1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than

6  one rational interpretation, the Court must uphold the Commissioner's decision. <u>Allen v. Heckler</u>, 749 F.2d

7  577, 579 (9th Cir. 1984).

8  I.      <u>The ALJ's Analysis of Plaintiff's Past Job as a Dishwasher</u>

9          At step one of the sequential disability evaluation process, a claimant will not be found disabled if he

10 or she engaged in "substantial gainful activity." 20 C.F.R. § 404.920(a)(4)(i), (b). Regarding plaintiff's past

11 job as a dishwasher, the ALJ found as follows:

12      After carefully considering the documentary evidence, I conclude that the claimant
        engaged in substantial gainful activity between July 4, 2002 and July 30, 2003. . . .

13

14      Approximately four years after the alleged onset of disability he obtained a job as a
        dishwasher at a restaurant. The claimant held the job from July 4, 2002 until July 30,
15      2003, at which point he was fired after failing to show up for a scheduled workday
        (Exhibit B12Fp2). The claimant's pay stubs show that he worked an average of 24.36
16      hours per week with earnings averaging $174.63 weekly. Records show that the
        claimant worked only 17.1 hours during the two week period between November 21,
17      2002 and December 4, 2002. However, his pay stubs otherwise show remarkable
        consistency with respect to his hours of work, which were never below 20.5 hours per
18      week with the one exception noted above. The number of hours that the claimant
        worked periodically exceeded 30 hours per week. It is noted that this contradicts the
19      claimant's testimony that he frequently missed work due to calling in sick. Given the
        nature of the restaurant business, the claimant's pattern of work as a dishwasher was not
20      aberrant and does not show an unsuccessful work attempt. His average monthly
        earnings were $658.21, which is very close to the presumptive threshold for substantial
21      gainful activity. The claimant's earnings exceeded the presumptive threshold for
        substantial gainful activity during the months of October 2002, April 2003, and June
22      2003 (Exhibit 10E). The number of hours that the claimant worked was based on the
        needs of his employer and the medical evidence (or more accurately, the lack of medical
23      evidence) supports a finding that the claimant could have worked full-time had the
        opportunity arisen. I therefore conclude that the claimant's work as a dishwasher
24      between July 4, 2002 and July 30, 2003 represents substantial gainful activity and he was
        not disabled during that period. . . . Since the claimant did not engage in substantial
25      gainful activity during the periods from July 17, 1998 to July 3, 2002 or from August 1,
        2003 to September 1, 2003, it is necessary to continue with the sequential evaluation.

26      . . . [T]he job [of dishwasher] was obviously performed recently enough to be
        considered past relevant work. However, since the claimant did not start the job until
27      July of 2002, I find that he had no past relevant work prior to that time. Thus, despite
        that fact that the claimant actually worked as a dishwasher form July 4, 2002 through
28      July 30, 2003, it is necessary to continue with the sequential evaluation.

Tr. 18-19, 27.

Plaintiff argues the issue of whether his past job as a dishwasher constituted substantial gainful activity was not properly before the ALJ for consideration, and thus he should have been precluded from addressing it. The undersigned agrees. In its order remanding the first ALJ's April 8, 2004 decision, the Appeals Council specifically addressed the issue of plaintiff's dishwasher job:

> The Administrative Law Judge (ALJ) found, in relevant part and for the period prior to September 1, 2003, that the claimant's mental impairments limit him to simple repetitive tasks due to moderate difficulties in maintaining concentration, persistence and pace (page 6 ¶ 2 and finding #4). The ALJ then found that the claimant is not precluded from returning to past relevant work as a dishwasher. The decision reflects that claimant was employed at this position from July 2002 through August 31, 2003, but that his wages did not represent substantial gainful activity (SGA) and it was an unsuccessful work attempt (page 2 ¶ 3-4). The ALJ found that the claimant has not engaged in SGA since July 17, 1998, the date the claimant alleged an inability to work (finding #1), [sic] However, the decision also indicates that the claimant engaged in SGA for several months during the period from July 2002 to August 2003 (page 6 ¶ 7). Thus, there are significant discrepancies in the decision on the issue of SGA. However, given that the ALJ cites the months October 2002, April 2003 and June 2003 as the sole months the claimant engaged in SGA, the Council concurs with the ALJ's determination that the totality of the work is an unsuccessful work attempt. Further, the claimant's work after the onset date of disability is not considered past relevant work. Thus, the ALJ's finding that the claimant can return to past relevant work is not supported pursuant to the adjudicative provisions in Social Security Rulings 82-61 and 82-62.

Tr. 288.

Plaintiff first asserts the ALJ is precluded from revisiting the issue of whether his past dishwasher job constituted substantial gainful activity by 20 C.F.R. § 416.1446, which reads as follows:

> (a) General. The issues before the administrative law judge include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in your favor. However, if evidence presented before or during the hearing causes the administrative law judge to question a fully favorable determination, he or she will notify you and will consider it an issue at the hearing.
>
> (b) New issues--
>
> > (1) General. The administrative law judge may consider a new issue at the hearing if he or she notifies you and all the parties about the new issue any time after receiving the hearing request and before mailing notice of the hearing decision. The administrative law judge or any party may raise a new issue; an issue may be raised even though it arose after the request for a hearing and even though it has not been considered in an initial or reconsidered determination. However, it may not be raised if it involves a claim that is within the jurisdiction of a State agency under a Federal-State agreement concerning the determination of disability.
>
> > (2) Notice of a new issue. The administrative law judge shall notify you and any other party if he or she will consider any new issue. Notice of the time and place of the hearing on any new issues will be given in the manner described in §

416.1438, unless you have indicated in writing that you do not wish to receive the notice.

As noted above, and pointed out by plaintiff, the issue at hand was decided entirely in his favor by the Appeals Council.  That is, the Appeals council expressly found plaintiff's past job as a dishwasher was not to be considered substantial gainful activity or past relevant work.  Plaintiff asserts the ALJ did not notify him that this issue would be considered, and defendant has not argued otherwise.  Thus, it appears the ALJ lacked the authority to consider it on remand.

In addition, on remand from the Appeals Council, an ALJ is to "take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b).  Here, the ALJ's finding that plaintiff's past job as a dishwasher constituted substantial gainful activity and past relevant work clearly was inconsistent with the Appeals Council's determination on this issue.  Indeed, the Appeals Council expressly remanded the matter to the ALJ not for re-consideration of whether plaintiff was capable of performing her past relevant work, but instead for a determination at step five of the sequential disability evaluation process.

Defendant responds by asserting that pursuant to Social Security Ruling ("SSR") 84-25, plaintiff's past dishwasher job cannot be considered an unsuccessful work attempt, because work attempts lasting for more than six months cannot be considered an unsuccessful work attempt. 1984 WL 49799 *3.  For work that has lasted more than six months, however, SSR 84-25 requires that it be at significant gainful activity levels. Id.  Here, though, the Appeals Council specifically found that plaintiff worked as a dishwasher at such level for only three separate months.

In any event, defendant's argument ignores the express finding of the Appeals Council that such work was not substantial gainful activity.  Defendant argues the Appeals Council's discussion of this issue was not binding on the ALJ on remand, because its remand order clearly vacated the prior administrative decision and remanded for a new hearing on the issue of disability.  This reading of the Appeals Council's order is wholly unpersuasive.  While it is true the Appeals Council stated at the beginning of its order that it was vacating the April 8, 2004 decision, it immediately followed that statement with its more detailed findings, conclusions and directions on remand. See Tr. 288.  If the Court were to adopt defendant's reasoning, this in effect would render all specific findings, conclusions and directions on remand set forth in remand orders meaningless.  This, the Court should decline to do.

REPORT AND RECOMMENDATION
Page - 6

1   Defendant further argues that to the extent the ALJ erred in finding plaintiff's past dishwasher job to

2   constitute substantial gainful activity and past relevant work, such error was harmless. See Batson v.

3   Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying

4   harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ committed

5   harmless error).   An error will be deemed harmless, however, only if it is "inconsequential" to the ALJ's

6   "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050,

7   1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate

8   disability conclusion).

9   Here, though, the ALJ's error was not inconsequential to the ultimate determination of plaintiff's

10  non-disability, and therefore was prejudicial.   Defendant asserts the error was harmless, because the ALJ

11  subsequently decided this matter at step five of the sequential disability evaluation process.   However, as

12  noted above, the ALJ expressly found that plaintiff had engaged in substantial gainful activity between July

13  4, 2002 and July 30, 2003, and that, therefore, he was not disabled during that period.   Indeed, according to

14  the Commissioner's own regulations, if a claimant engages in substantial gainful activity, he or she will not

15  be found disabled. See 20 C.F.R. § 416.920(a)(4)(i), (b).   That is, no matter what the ALJ had determined

16  at step five, plaintiff would not have been found disabled during the period of July 4, 2002, through July 30,

17  2003, because of the ALJ's step one finding.

18  II.   The ALJ's Step Two Analysis

19  At step two of the sequential disability evaluation process, the ALJ must determine if an impairment

20  is "severe." Id.   An impairment is "not severe" if it does not "significantly limit" a claimant's mental or

21  physical abilities to do basic work activities. 20 C.F.R.§ 416.920(a)(4)(iii), (c); SSR 96-3p, 1996 WL

22  374181 *1.   Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R.§

23  416.921(b); SSR 85- 28, 1985 WL 56856 *3.

24  An impairment is not severe only if the evidence establishes a slight abnormality that has "no more

25  than a minimal effect on an individual[']s ability to work."   See SSR 85-28, 1985 WL 56856 *3; Smolen v.

26  Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).   Plaintiff

27  has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work

28  activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599,

601 (9th Cir. 1998).   The step two inquiry described above, however, is a *de minimis* screening device used

1    to dispose of groundless claims.  Smolen, 80 F.3d at 1290.

2         A.     Attention Deficit Disorder

3         Plaintiff argues the ALJ erred in not finding his attention deficit disorder to be a severe impairment.

4    With respect to that alleged impairment, the ALJ found as follows:

5         The claimant has a history of attention deficit disorder and he qualified for special
          education assistance in school, although it appears that this was based on asthma and
6         migraines rather than attention deficit disorder.  The claimant's problems in school were
          attributed to poor organizational skills and attendance (Exhibit B8Ep4, 10).  Dr. Smith
7         reported that the claimant's ability to focus and scan was only mildly impaired.  Dr.
          Bremer specifically noted that he did not see signs and symptoms indicative of attention
8         deficit disorder, which indicates that the condition is, at most, mild.  I note that the
          claimant reported reading magazines, building models, and playing video games, all of
9         which indicate an ability to maintain attention and concentrate (B4E, B4F).  I therefore
          conclude that the claimant's attention deficit disorder is not a severe impairment.

10   Tr. 22-23.  The undersigned agrees that the ALJ did not fully consider the medical evidence in the record

11   concerning this issue, and thus erred in concluding plaintiff's ADD was not severe.

12        The medical evidence regarding the presence of plaintiff's attention deficit disorder is mixed.  For

13   example, plaintiff was evaluated in early October 1998, by Jeff Bremer, Ph.D., who found "no signs" of

14   ADD or attention deficit hyperactivity disorder ("ADHD"). Tr. 109.  Cliff Scharf, Ed.D., and Charles

15   Regets, Ph.D., two non-examining medical sources, also failed to find any evidence plaintiff had attention

16   deficit disorder. Tr. 112-23.  On the other hand, Kathleen M. Hurd, M.D., suspected in early December

17   1999, that his "learning disability and possible attention deficit disorder and possible behavior and

18   psychosocial problems" would "limit his ability to function and be productive in a work or training

19   capacity," and would "probably require some type of special vocational program." Tr. 274.

20        Donna M. Smith, Psy.D., who evaluated plaintiff in early June 2000, diagnosed him with ADHD,

21   combined type, as well as a learning disorder by history, and found he had a number of moderate mental

22   functional limitations as a result thereof. Tr. 224-25.  Dr. Smith, however, indicated medication might help

23   plaintiff's ADHD, and felt he could learn to manage it. Tr. 225-26.  In mid-September 2003, she once more

24   evaluated plaintiff, opining that his ADHD "[o]bviously" influenced his performance on psychological

25   testing. Tr. 234.  She further concluded his ability to be on time, follow instructions and stay with protocol

26   were impaired "most likely because of his ADHD and other learning disorders." Tr. 235.

27        At the second, January 23, 2004, hearing, the medical expert, John E. Kooiker, M.D., testified that

28   while an attention deficit might be present, the record showed that such a condition had never been tested.

Tr. 425.  At the third, September 9, 2005, hearing, however, the other medical expert, Arthur Levy, Ph.D., testified that plaintiff had both an attention deficit disorder and a verbal learning disorder. Tr. 455.  He also testified that as a result those conditions, plaintiff was moderately limited in activities of daily living, social functioning and concentration, persistence and pace. Tr. 455.

With respect to the reasons the ALJ provided for not finding plaintiff's attention deficit disorder to be severe, the fact that plaintiff's documented problems in school were not tied specifically to his history of attention deficit disorder, does not necessarily mean that impairment did not have an impact on his ability to do basic work activities during the relevant time period.  In addition, although the ALJ noted that Dr. Smith found plaintiff's ability to focus and scan was only mildly impaired, and that Dr. Bremer did not see any signs of his ADD, the ALJ failed to discuss the other findings made by Dr. Smith and the testimony of Dr. Levy.  As discussed above, both of these medical sources opined that plaintiff had significant mental functional limitations resulting from that impairment.

Finally, while reading magazines, building models, and playing video games certainly may indicate an ability to maintain attention and concentrate at least to a certain extent, here, the amount of time plaintiff reported engaging in such activities each week does not appear to have been extensive. Tr. 75, 108.  In any event, the fact that plaintiff spent time pursuing those activities again does not necessarily mean he did not have more than minimal restrictions in his ability to perform work-related activities.  Given the *de minimis* nature of step two of the sequential disability evaluation process, and in light of the conflicting evidence from the medical sources in the record concerning plaintiff's ADD discussed above, the ALJ should have looked more closely at this issue.

B.      <u>Depression</u>

Plaintiff argues the ALJ erred in not finding his depression to be a severe impairment, noting that while Dr. Lewy testified he did not see any evidence of a depressive disorder, he also agreed that a lack of motivation could be a neuro-vegetative sign of depression.  Dr. Lewy, however, did not testify that plaintiff in fact suffered from depression.  Rather, as admitted by plaintiff, Dr. Lewy testified that he saw no "signs and symptoms that would suggest major depression." Tr. 464.  In addition, although Dr. Lewy did testify that lack of motivation "is often found in people with major depression" (Tr. 465), the fact is he did not testify that this was the case in plaintiff's situation.  The other medical expert, furthermore, provided no

1    testimony whatsoever that would indicate he felt plaintiff suffered from depression, let alone depression that

2    resulted in more than minimal work-related limitations.

3        Dr. Bremer, who provided a detailed evaluation of plaintiff back in early October 1998, also made

4    no findings with respect to depression, nor did Drs. Sharf or Regets, the two non-examining, non-testifying

5    medical sources who also reviewed the record. Tr. 107-11, 119.  Indeed, the only medical source to have

6    diagnosed plaintiff with depression resulting in significant mental functional limitations was Dr. Smith. Tr.

7    229-30.  Even then, however, she opined that plaintiff would be so limited for at most six months. Tr. 231;

8    see Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from

9    medically determinable impairment that can be expected to result in death or that has lasted or can be

10   expected to last for continuous period of not less than twelve months).  Accordingly, the undersigned finds

11   the ALJ did not improperly fail to find plaintiff's alleged depression to be severe.

12       C.    Asthma, Eczema and Migraines

13       Lastly, plaintiff argues the ALJ erred in finding his migraine headaches, asthma and eczema to be not

14   severe.  With respect to those impairments, the ALJ specifically found as follows:

15       The claimant has a history of asthma, eczema, and migraines.  However, the medical
         records show that he smoked up to a pack of cigarettes daily in addition to his marijuana
16       use, which does not indicate that his asthma was a major problem (Exhibit B12Fp5).  On
         July 24, 2000, the claimant reported that his asthma was not particularly bothersome
17       until recently (exhibit B10F).  Dr. Ritchie characterized the claimant's asthma, eczema,
         and migraines as mild and did not think that they would prevent the claimant from going
18       to school or getting a job (Exhibit B10Fp10).  On December 28, 2000, the claimant
         reported that asthma was not bothering him recently and his eczema was under control
19       (Exhibit B10Fp7).  The claimant reported a history of migraines, but was not interested
         in taking daily medication for this.  I note that Dr. Hurd reported that neither the
20       claimant nor his parents had identified migraines as a primary complaint since she first
         saw him four years earlier.  Obviously, the claimant's migraines, asthma, and eczema did
21       not prevent him from working as a dishwasher between July of 2002 and July of 2003.  I
         therefore find that migraines, asthma, and eczema are not severe impairments.
22
23   Tr. 23.

         1.    Asthma
24
25       As with plaintiff's attention deficit disorder, the objective medical evidence in the record regarding

26   the severity of his asthma is mixed.  For example, in late September 1998, one non-examining consulting

27   physician found that while plaintiff had "good control" of his asthma, he should avoid pulmonary irritants.

28   Tr. 95, 98.  In early December 1999, however, Dr. Hurd opined that his asthma problems "could be very

     well controlled with a compliant program of medication therapy." Tr. 274.  In late July 2000, R. Samantha

1   Ritchie, M.D., found his asthma to be only a "mild" medical problem, and did not think it "would stop him

2   from being able to either go to school or get a job." Tr. 247.

3       At the January 23, 2004 hearing, Dr. Kooiker testified that he was "not impressed" with plaintiff's

4   physical impairments, and the record was not really clear concerning the severity of some of those

5   impairments, including his asthma. Tr. 429-30.  Nevertheless, he did feel that they added "to the whole

6   problem" and that, "with the totality of the combination" of impairments, plaintiff would meet or equal the

7   criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.08 (personality disorder).[4] Id.  The ALJ did not

8   discuss all of the above medical opinion source evidence in evaluating the severity of plaintiff's asthma, and,

9   as such, the undersigned is unable to determine whether he in fact considered it.

10      In addition, the reasons the ALJ did give for finding plaintiff's asthma not severe are unpersuasive.

11  For example, the fact that plaintiff continued to smoke cigarettes does not in itself mean his asthma was a

12  non-significant problem, but merely that he may not have been as compliant in treating his condition as he

13  should have been. See, e.g. Tr. 272.  While Dr. Ritchie did make the findings the ALJ found he had made,

14  as just mentioned, the ALJ failed to discuss the other objective medical evidence in the record that support

15  plaintiff's allegation that his asthma caused significant work-related limitations.  Finally, plaintiff did not

16  report in late December 2000, that his asthma had not bothered him until recently, but rather that it had not

17  been bothering him recently. Tr. 244.

18      Plaintiff argues the ALJ also must consider his subjective complaints in addition to the objective

19  medical evidence in evaluating the severity of his impairments.  Specifically, plaintiff asserts there is a

20  significant amount of lay witness evidence in the record to show that his asthma, eczema and migraines

21  worsened while he worked as a dishwasher.  It is true that an ALJ must consider a claimant's pain and other

22  symptoms at step two of the sequential disability evaluation process. See 20 C.F.R.§ 416.929(d)(1).  It also

23  is true, as discussed below, that the ALJ erred in evaluating the lay witness evidence in the record.  As

24  further discussed below, however, it is not clear that the ALJ would be required to adopt that evidence or

---

25

26      [4]At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see
    if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R §
27  416.920(d); Tackett, 180 F.3d at 1098.  If any of the claimant's impairments meet or equal a listed impairment, he or she is
    deemed disabled. Id.  An impairment meets a listed impairment "only when it manifests the specific findings described in the set
28  of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.  An impairment equals a listed impairment "only
    if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set
    of medical findings for the listed impairment." Id. at *2.

REPORT AND RECOMMENDATION
Page - 11

1  find plaintiff's asthma to be severe, particularly in light of the mixed nature of the medical evidence in the

2  record regarding that condition.

3              2.    Eczema

4         As for plaintiff's eczema, he reported in early June 1998, getting "fairly good results" from the use

5  of his medication therefor, and noted that "no symptoms" seemed to be bothering his hands, although they

6  were cracked at the time. Tr. 91.  Indeed, no manipulative limitations were noted during a review of the

7  record performed by a non-examining consulting physician in late September 1998. Tr. 97.  As with his

8  asthma, Dr. Hurd opined in early December 1999, that his eczema "could be very well controlled with a

9  compliant program of medication therapy." Tr. 274.

10        During her examination of plaintiff in late July 2000, Dr. Ritchie noted only that he had "some very

11 mild eczema in the palms of his hands and on his finger webs bilaterally," which she deemed to be a "mild"

12 medical problem. Tr. 247.  Thus, Dr. Ritchie did not think it "would stop him from being able to either go

13 to school or get a job." Id.  In late December 2000, she noted that plaintiff's eczema was "currently under

14 control." Tr. 244.  In early September 2003, Dr. Ritchie merely noted that he had "some dermatitis" on his

15 hands. Tr. 261.  As discussed above, Dr. Kooiker was "not impressed" with plaintiff's physical impairments,

16 including his eczema, but did feel they combined with his mental impairments to meet or equal the criteria of

17 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.08. Tr. 429-30.

18        As noted above, the ALJ found plaintiff's eczema to be not severe based on the fact that in late

19 December 2000, it was under control.  Plaintiff argues the ALJ erred in so finding, asserting that the lay

20 witness evidence in the record show that this condition worsened while he was working as a dishwasher.

21 As discussed elsewhere herein, the ALJ was required to consider pain and other symptoms in conducting his

22 step two analysis, but erred in evaluating that lay witness evidence.  Thus, while, as set forth above, there

23 appears to be very little objective medical evidence in the record to support plaintiff's allegations regarding

24 the severity of his eczema, it is unclear that the ALJ properly considered all relevant evidence in making his

25 step two determination.  To that extent he erred.

26              3.    Migraines

27        In early December 1999, Dr. Hurd noted that while plaintiff reported going to school intermittently

28 after 1996, largely due his asthma and headaches, he only visited the doctor's office "infrequently for this,"

and was "never treated primarily for migraines because this was never brought up as a major issue" by him or his parents. Tr. 273.  Again, Dr. Hurd opined that his headaches "could be very well controlled with a compliant program of medication therapy." Tr. 274.  In late July 2000, Dr. Ritchie noted that he was "not particularly interested" in taking daily medication for his headaches. Tr. 246.

As with his asthma and eczema, Dr. Ritchie further opined that his headaches were a mild medical problem, and did not think that they would stop him from being able to go to school or get a job. Tr. 247. Again, the undersigned notes that while Dr. Kooiker felt that plaintiff's combined physical impairments, including his headaches, contributed to his personality disorder meeting or equaling the criteria for that impairment contained in the Listings, he was "not impressed" by them. Tr. 429-30.  Thus, the objective medical evidence in the record once more provides very little support for plaintiff's allegations that his migraines constituted a severe impairment.

Plaintiff asserts, however, that such evidence is consistent with his testimony and the testimony of the lay witnesses in the record that he has had migraine headaches since he was a child, and that they have interfered with his ability to do anything at least once per week.  First, as just noted, the objective medical evidence in the record does not support this assertion.  Second, the ALJ determined plaintiff to be not fully credible, a determination plaintiff has not challenged here.  Third, the mere fact that plaintiff may have had these headaches since childhood, does not necessarily mean they met the requisite level of severity during the pertinent time period.  Nevertheless, this issue too must be re-considered in light of the ALJ's failure properly evaluate the lay witness testimony in the record as discussed below.

III.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work

must result from his or her "physical or mental impairment(s)." <u>Id.</u>  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." <u>Id.</u>  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." <u>Id.</u> at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> [T]he claimant has no physical limitations.  He retains the residual functional capacity to perform simple and repetitive tasks.  The claimant can tolerate limited contact with the public and occasional contact with co-workers.  He is best taught by demonstration.

Tr. 26, 28A.  Plaintiff argues this assessment of his residual functional capacity is not accurate, because it does not include all of the moderate mental functional limitations found by Dr. Smith in early June 2000, in the following areas: exercise judgment; make decisions; perform routine tasks; respond appropriately to and tolerate the pressures and expectations of a normal work setting; care for himself; control physical or motor movements; and maintain appropriate behavior. Tr. 225.

The ALJ rejected Dr. Smith's early June 2000 findings for the following reasons:

> Dr. Smith is not a treating doctor and only saw the claimant for disability evaluations.  The report is done in check-box format and does not contain a significant explanation of the bases for the conclusions.  I note that the claimant had little incentive to present himself in a manner that would lead Dr. Smith to conclude that he could work.  Again, Dr. Smith characterized the claimant's motivation as extremely poor.  The fact that the claimant worked as a dishwasher for a year shows that he could perform routine tasks and tolerate the stresses of work.

Tr. 26.  Plaintiff argues these are not valid reasons for rejecting Dr. Smith's findings.  The undersigned agrees.  However, it is not at all clear the ALJ was required to adopt those findings.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The fact that Dr. Smith is an examining, rather than a treating, physician is not an appropriate basis upon which to reject her opinion. See, e.g. Lester, 81 F.3d at 830-31 (even when examining physician's opinion is contradicted, it can only be rejected for specific and legitimate reasons supported by substantial evidence).  In addition, absent "evidence of actual improprieties," the purpose for which a medical opinion is obtained is not a legitimate basis for rejecting it. See Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1996)

("An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner.").

It is true that individualized medical opinions, rather than "check-off" reports are preferred in the Ninth Circuit See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983). Here, however, although written on a standard form that does contain boxes to check, it does not appear that Dr. Smith's early June 2000 opinion is the kind of minimal "check-off" report that is disfavored. Rather, while Dr. Smith's opinion may not include comments as extensive as those in other evaluations contained in the record, they are far from minimal. Indeed, as pointed out by plaintiff, notations in Dr. Smith's opinion indicate her findings were based at least in part on psychological testing that took him two hours to complete. Tr. 224. This type of opinion report, furthermore, has been frequently relied upon by the Commissioner in the past in making disability determinations.

The ALJ further states that plaintiff "had little incentive to present himself in a manner that would lead Dr. Smith to conclude that he could work." Tr. 26. However, the ALJ points to nothing in Dr. Smith's opinion or the record as a whole to support this conclusion. It is true that Dr. Smith noted "[e]xtremely poor motivation" might have a bearing on plaintiff's ability to perform during a normal work day. Tr. 226. However, this comment does not necessarily indicate that plaintiff was attempting to deceive Dr. Smith as to his mental functional limitations during the actual evaluation. The ALJ, furthermore, failed to put forth any reason why, if plaintiff had attempted to present himself in a dishonest manner, Dr. Smith, a licensed professional, would be unable to pick up on such an attempt.

Finally, with respect to plaintiff's prior work as a dishwasher, as discussed above, the ALJ erred in finding that job constituted substantial gainful activity and past relevant work. Thus, the ALJ's reliance on plaintiff's ability to do that job as proof of his capability of performing routine tasks and tolerating work stresses is questionable at best. Even if it was proper for the ALJ to have relied on plaintiff's work history in this regard, that still leaves the findings of Dr. Smith that plaintiff was moderately limited in his ability to exercise judgment and make decisions, care for himself, control his physical or motor movements, and maintain appropriate behavior, all of which the ALJ failed to address.

The undersigned, however, rejects plaintiff's argument that Dr. Smith's findings are fully consistent with the other objective medical evidence in the record concerning his mental functional limitations. For

example, he was assessed by Dr. Bremer in early October 1998, in relevant part as follows:

> Mr. Moore . . . would be expected to be able to follow work rules and function
> independently, provided his duties were consistent with his documented borderline
> general level of intellectual functioning.  His ability to deal with . . . work stressors is
> estimated to [sic] good.  He appears capable of maintaining personal appearance,
> behaving in an emotionally stable manner, and relating predictably in social situations.
> By self-report, he has also demonstrated an ability to be reliable . . .

Tr. 111.  Dr. Sharf and Dr. Regets found that plaintiff seldom would have deficiencies of concentration,

persistence or pace, and that there was insufficient evidence he would experience episodes of deterioration

or decompensation in work or work-like setting. Tr. 123.

On the other hand, Drs. Sharf and Regets did opine that plaintiff would be moderately limited in his

ability to complete a normal workday and workweek, perform at a consistent pace and set realistic goals or

make plans independently of others. Tr. 113.  In addition, while Dr. Sharf and Dr. Regets felt he could "be

reliable in following work rules," they thought plaintiff would "probably benefit from supervisory support if

changes to his job setting are necessary." Tr. 114.  Dr. Kooiker testified at the first hearing that plaintiff

would have a moderate to marked impairment with respect to concentration, persistence or pace and one to

two episodes of decompensation. Tr. 427-28.

At the second hearing, Dr. Lewy testified that plaintiff had moderate limitations in concentration,

persistence and pace, but no evidence of any episodes of decompensation. Tr. 455.  He further testified that

he saw no reason why plaintiff would have trouble being on time in a work environment. Tr. 456.  Plaintiff

argues Dr. Lewy also testified that he agreed with the moderate limitations found by Dr. Smith.  A review

of Dr. Lewy's testimony, however, does not entirely bear this out.  At the hearing, plaintiff's attorney stated

as follows:

> And then Dr. Smith noted in Exhibit B7F that he would have moderate limitations in the
> ability to respond to and target pressures and expectations of [sic] normal work setting.
> Subsequently, Benny actually did try to work at a simple unskilled job and failed.  Do
> you agree with the doctor's earlier assessments?

Tr. 462.  Dr. Lewy responded that "[i]n terms of moderate limitations, I would agree." Id.

Contrary to plaintiff's assertion, this exchange merely shows that Dr. Lewy agreed with Dr. Smith's

assessment of moderate limitation in the area of plaintiff's ability to respond to and tolerate the pressures

and expectations of a normal work setting.  He thus did not express any opinion with respect to any of Dr.

Smith's other findings.  As such, while certainly some of the medical evidence in the record supports the

1  findings contained in Dr. Smith's early June 2000 opinion, other such evidence fails to do so.  Accordingly,

2  this constitutes an additional issue to be addressed on remand.

3  IV.   The ALJ's Evaluation of the Lay Evidence in the Record

4          Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into

5  account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to

6  each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001).  An ALJ may discount lay

7  testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.

8  1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  In rejecting

9  lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for

10  dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those

11  reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.  The ALJ also may

12  "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

13          A.   Plaintiff's Mother

14          Plaintiff argues the ALJ erred in failing to consider the testimony of plaintiff's mother Roseanne

15  Moore.  Defendant concedes the ALJ so erred, but asserts that error was harmless, because her testimony

16  essentially mirrored that of plaintiff.  The undersigned finds defendant's assertion to be without merit.  As

17  discussed above, an error will be deemed harmless only if it is "inconsequential" to the ALJ's ultimate

18  determination of non-disability. Stout, 454 F.3d at 1055.  Here, such error was not inconsequential.  It may

19  be that the testimony of Ms. Moore largely reflected that of plaintiff.  The ALJ, however, did not give this

20  as a reason for not adopting her testimony, and it is not clear this is what the ALJ would have done had he

21  properly given consideration to that testimony.

22          The fact that the ALJ may have found Roseanne Moore's testimony to be inconsistent with

23  plaintiff's ability to work as a dishwasher for over a year without any special accommodation also is not

24  particularly relevant to the issue at hand.  First, just because the ALJ may have made this finding, does not

25  mean he meant to find all of Ms. Moore's testimony to be incredible.  In addition, as discussed above, the

26  ALJ's findings regarding plaintiff's past work as a dishwasher were improper, and so are of limited

27  application to the credibility determination regarding that testimony.

28          Finally, the undersigned notes that it is true that the ALJ found plaintiff's testimony to be not fully

REPORT AND RECOMMENDATION
Page - 18

credible, a finding which plaintiff has not challenged, and that this can be a valid reason for discounting lay witness testimony. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). A determination to discount lay witness testimony for this reason, however, is proper only with respect to those lay witnesses whose statements do "not fully explain sufficiently when and to what extent they had the opportunity to observe" the claimant. Id. at 918. Here, it cannot be argued that Ms. Moore lacked sufficient opportunity to observe plaintiff. Indeed, she provided extensive testimony regarding her observations of his physical and mental impairments and limitations. See, e.g. Tr. 379, 413-14, 416-17, 420-22.

      B.      Mr. Moore, Mr. Bauer and Ms. Darby

     The record contains written statements from plaintiff's father, James Moore, his friend, Joey Bauer, and a friend of his family, Eileen Darby, which the ALJ dealt with as follows:

> I have considered the statements from Joey Bauer, James Moore, and Eileen Darby, but do not give them significant weight (Exhibits B13E, B14E, B15E). Their statements are highly exaggerated and while they may have a little validity for an earlier period of the claimant's life, they are seriously at odds with the medical record during the period at issue. Ms. Darby reported that the claimant was placed in a closet in classrooms so that he would not catch illnesses from other children, which is absurd (Exhibit B15Ep2). Mr. Moore stated that the claimant could only stay on task when supervised and with someone helping him, which is not consistent with the claimant's ability to work as a dishwasher for a year. I note that Mr. Moore had an obvious financial interest in this claim since he was supporting the claimant financially. Mr. Bauer stated that the claimant's back problem and asthma were the most serious conditions. However, the medical evidence shows that the claimant had few complaints of back pain and x-rays showed only mild scoliosis.

Tr. Tr. 25-26. Plaintiff argues these were not legally adequate reasons for rejecting the statements of above three lay witnesses. The undersigned agrees.

     First, while, as noted above, an ALJ may discount lay testimony where that testimony conflicts with the medical evidence in the record, here, the ALJ failed to state with any specificity what medical evidence he found to be at odds with the statements provided by Mr. Moore, Mr. Bauer and Ms. Darby. It is true that the ALJ need not cite to the specific record as long as "arguably germane reasons" for dismissing the testimony are noted. In this case, however, the ALJ's failure to set forth in his decision, even in a general sense, exactly what in the medical evidence he felt contradicted their statements, prevents the undersigned from being able to determine if this was a proper basis for rejecting those statements.

     The ALJ also rejected Ms. Darby's statement on the basis that it was "absurd" for her to report that plaintiff had been placed in a closet in classrooms so that he would not catch illnesses from other children.

1    This conclusion, however, appears to be based solely on the ALJ's own subjective belief, as he points to

2    nothing in the record to support it.  While it certainly may be hard to believe that plaintiff would have been

3    placed in such a situation, that does not necessarily mean it did not happen.  As noted above, to reject lay

4    testimony, an ALJ must provide germane reasons for doing so.  Although this standard is not particularly

5    high, the reason provided still must be supported by substantial evidence.  An ALJ's own subjective beliefs

6    not linked to any evidence in the record falls way short of what is required.

7            The ALJ found Mr. Moore's statement that plaintiff could only stay on task when he is supervised

8    and has someone help him was inconsistent with plaintiff's ability to work as a dishwasher for a year.

9    Again, however, as discussed above, the ALJ erred in finding that job to be substantial gainful activity and

10   past relevant work.  Also as discussed above, there is medical evidence in the record that indicates plaintiff

11   did have problems with concentration, persistence and pace, and might require some supervisory support.

12   As such, it is not clear the ALJ put the time plaintiff spent performing the job of dishwasher or the relevant

13   medical evidence in proper perspective when evaluating Mr. Moore's statement.

14          The ALJ further found Mr. Moore had "an obvious financial interest" in plaintiff's claim, as he was

15   supporting him financially. Tr. 26.  Plaintiff argues that Mr. Moore had a greater interest in seeing him get a

16   job and become independent.  However, as it is the ALJ's sole responsibility to determine credibility and

17   resolve ambiguities and conflicts in the evidence, the undersigned cannot fault him for finding the former

18   possibility to be more credible than the latter one.  This is particularly true given the additional factors

19   discussed below, which the ALJ properly may consider.  Plaintiff also challenges the notion that the ALJ

20   need only give "arguably germane reasons" for discounting lay witness testimony.  Clearly, though, as set

21   forth above, this is the proper standard in the Ninth Circuit.

22          While it is true that descriptions by friends and family members who are in a position to observe a

23   claimant's symptoms and daily activities must be treated as competent evidence, it appears the existence of

24   a "close relationship" and the potential to be "influenced" by the "desire to help" can be viewed as being

25   "germane" to the particular lay witness. Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing 20

26   C.F.R. § 404.1513(e)(2)); Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  Thus, in Greger, the ALJ

27   properly considered the close relationship that existed between the claimant and his former girlfriend and the

28   possibility that she may have been influenced by the desire to help him.

1    It is difficult to argue that the relationship between a parent and child is less close than that between

2    a former boyfriend and girlfriend.  In this case, there is no indication that plaintiff lacks that kind of close

3    relationship with his parents.  Rather, the opposite appears to be true, as plaintiff continued to live with his

4    parents during the relevant time period.  As such, the undersigned cannot say that this was an improper

5    basis upon which the ALJ could discount Mr. Moore's testimony.  Nevertheless, because, as discussed

6    above, Mr. Moore's testimony regarding plaintiff's ability to stay on task and his need for supervision or

7    other help is consistent with at least some of the medical evidence in the record, the Commissioner should

8    re-evaluate that testimony on remand as well.

9    The ALJ rejected the statement provided by Mr. Bauer because he reported that plaintiff's most

10   serious conditions were his back problem and asthma, while the medical evidence in the record showed

11   plaintiff had few complaints of back pain and x-rays revealed only mild scoliosis.  It is true that there is very

12   little medical evidence in the record to show plaintiff's back problem created significant functional

13   limitations for him. See Tr. 95-96, 236-37, 244, 261-63, 274.  As discussed above, however, there is other

14   evidence in the record, medical and otherwise, that plaintiff's asthma may constitute a severe impairment.

15   In addition, Mr. Bauer provided comments regarding observations he made of other physical and mental

16   impairments he stated plaintiff had, which the ALJ did not address. Tr. 211-15.

17   V.    The ALJ's Step Five Analysis

18   If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation

19   process the ALJ must show there are a significant number of jobs in the national economy the claimant is

20   able to do. Tackett, 180 F.3d at 1098-99; 20 C.F.R.§ 416.920(d), (e).  The ALJ can do this through the

21   testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the

22   "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

23   An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

24   posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

25   1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

26   medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

27   Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by

28   the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that

1  description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

2  2001).

3        At the September 9, 2005 hearing, the ALJ posed a hypothetical question to the vocational expert,

4  which included the same limitations contained in the ALJ's assessment of plaintiff's residual functional

5  capacity. Tr. 466.  In response to that question, the vocational expert testified that plaintiff would be able to

6  perform other jobs given the limitations posed by the ALJ. Tr. 466-67.  Based on the vocational expert's

7  testimony, the ALJ found plaintiff to be capable of performing other work existing in significant numbers in

8  the national economy during the relevant time period. Tr. 28.

9        Plaintiff argues that because the ALJ erred in rejecting the moderate mental functional limitations

10  found by Dr. Smith and agreed with by Dr. Lewy, and because the vocational experts at both the January

11  13, 2004, and September 9, 2005 hearings testified that those limitations would preclude him from being

12  able to perform all work, he should be found disabled.  The undersigned disagrees.  First, as discussed

13  above, it is not at all clear the ALJ would be required to adopt any or all of the moderate limitations found

14  by Dr. Smith.  Also as discussed above, at most, Dr. Lewy testified that he agreed with only one of those

15  limitations found by Dr. Smith.  As such, it is premature to determine whether plaintiff should be found

16  disabled based on the testimony of either vocational expert.

17  VI.   This Matter Should Be Remanded for Further Proceedings

18        The Court may remand this case "either for additional evidence and findings or to award benefits."

19  Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course,

20  except in rare circumstances, is to remand to the agency for additional investigation or explanation."

21  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in

22  which it is clear from the record that the claimant is unable to perform gainful employment in the national

23  economy," that "remand for an immediate award of benefits is appropriate." Id.

24        Benefits may be awarded where "the record has been fully developed" and "further administrative

25  proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

26  1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

27        (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
        evidence, (2) there are no outstanding issues that must be resolved before a
28        determination of disability can be made, and (3) it is clear from the record that the ALJ
        would be required to find the claimant disabled were such evidence credited.

REPORT AND RECOMMENDATION
Page - 22

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain with respect to the severity of several of plaintiff's impairments, his residual functional capacity, and his ability to perform other work existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

Although not specifically argued by plaintiff, the undersigned does recognize that where lay witness testimony is improperly rejected, as it was in this case, such testimony may be credited as a matter of law. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence rejected by ALJ is given effect required by federal regulations, it became clear claimant's limitations were sufficient to meet or equal listed impairment).  The courts, however, do have "some flexibility" in how they apply the "credit as true" rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).  Further, Schneider dealt with the situation where no evidence was cited to contradict the statements of five lay witnesses regarding the claimant's disabling impairments. 223 F.3d at 976.  Such is not the case here.

Plaintiff does argue, however, that should this Court remand this matter for further administrative proceedings, it should be remanded to a different ALJ.  He asserts the ALJ refused to follow the direction of the Appeals Council, and even went out of his way to try to reverse its remand order, thus compromising his impartiality and the integrity of the disability review process.  The undersigned disagrees.  Although the ALJ clearly erred in finding plaintiff's past job as a dishwasher constituted substantial gainful activity and past relevant work in light of the Appeals Council's remand order discussed above, it is not at all clear the ALJ went out of his way to do so or otherwise lacked the requisite impartiality.

It is true that the requirements of due process demand "impartiality on the part of those who function in judicial or quasi-judicial capacities." Schweiker v. McClure, 456 U.S. 188, 195 (1982).  However, hearing officers who decide social security claims are presumed to be unbiased. Id.  This presumption "can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." Id.  The burden of establishing such a disqualifying interest though "rests on the party making the assertion." Id. at 196.  To do so, that party must show "the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" Rollins v. Massanari, 246 F.3d 853, 858 (9th Cir. 2001) (citing Liteky v. United States, 510 U.S. 540, 555-56 (1994)).  Further, "actual bias," rather than "mere appearance of impropriety," must be shown to disqualify an ALJ. Bunnell v.

1    Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003).  Plaintiff has made no such showing here.

2                                           CONCLUSION

3           Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff

4    was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for

5    further administrative proceedings in accordance with the findings contained herein.

6           Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),

7    the parties shall have ten (10) days from service of this Report and Recommendation to file written

8    objections thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

9    objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit

10   imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 27, 2007**,

11   as noted in the caption.

12          DATED this 2nd day of April, 2007.

13

14

15                                            Karen L. Strombom
                                             United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 24